Ethel M. WEBSTER, Jack L. Schimpf, and Thomas C. Fehr, Plaintiffs–Appellants,

v.

KONCZAK CORP. and Luxury Unltd., Inc., as partners d/b/a Johnny Nolon's Saloon & Gambling Emporium, Defendants–Appellees.

No. 97CA1030.

Colorado Court of Appeals, Division IV.

June 25, 1998.

As Modified on Denial of Rehearing Sept. 10, 1998.

M. Patricia Marrison, P.C., M. Patricia Marrison, Katherine J. Koteles, Colorado Springs, Colorado, for Plaintiffs–Appellants

Sherman & Howard, L.L.C., Raymond M. Deeny, Edward J. Butler, Brenda K. Heinicke, Colorado Springs, Colorado, for Defendants–Appellees

Opinion by Judge RULAND.

In this action to recover damages for wrongful discharge, plaintiffs, Ethel M. Webster, Jack L. Schimpf, and Thomas C. Fehr, appeal from the summary judgment entered in favor of defendants, Konczak Corp. and Luxury Unltd., Inc., as partners doing business as Johnny Nolon's Saloon & Gambling Emporium (the Casino). We affirm in part, reverse in part, and remand for further proceedings.

Plaintiffs are former blackjack dealers at the Casino. In their complaint, plaintiffs alleged that they were fired in retaliation for exercising a duty as licensed dealers to report suspected statutory and regulatory violations. Specifically, they alleged that the tip distribution policy implemented at the Casino violated the applicable statute and regulation and that they were fired for reporting the violation to an officer of the Division of Gaming.

The Casino answered alleging, among other things, that the terminations were based solely on plaintiffs' failure to meet the newly adopted speed and accuracy standards implemented for blackjack dealers.

Subsequently, the Casino moved for summary judgment on the grounds that the former tip policy was legal. In the alternative, the Casino asserted that the terminations were based solely on plaintiffs' failure to comply with the performance standards and

that the supervisor who fired them was unaware of their report to the Division.

The court granted the Casino's motion and dismissed the complaint with prejudice.

## I.

The original tip distribution policy adopted by the Casino for blackjack dealers and filed with the Division did not require any disbursement to "bar and cage" employees at the Casino. However, a supervisor changed the policy, without prior notice to the Division, and directed that 1.5% of the tips be distributed to these employees.

Plaintiffs first contend that the court erred in concluding that the adoption of the modified tip distribution policy was not a violation of the Limited Gaming Act. We are not persuaded.

## A.

█ Plaintiffs argue that §12–47.1–820, C.R.S.1997, and the relevant Gaming Commission's regulations prohibit management from implementing policies directing the manner in which dealer tips are distributed. We disagree.

Section 12–47.1–820 states that:

It is unlawful for any dealer, floorman, or other employee who serves in a supervisory position, to solicit or accept any tip or gratuity from any player or patron at the premises where he is employed. A dealer may, however, accept tips or gratuities from a patron at the table at which such dealer is conducting play, subject to the provisions of this section. All such tips or gratuities shall be immediately deposited in a lockbox reserved for that purpose, accounted for, and placed in a pool for distribution *based upon criteria established in advance by the licensed retailer.* (emphasis supplied)

The term "retailer" is defined as "any licensee who maintains gaming at his place of business within the cities of Central, Black Hawk, or Cripple Creek for use and operation by the public." Section 12–47.1–103(24), C.R.S.1997.

The Colorado Limited Gaming Control Commission's *Internal Control Minimum Procedures,* Section II(A), concerning "Blackjack," incorporates §12–47.1–820 in its entirety, but also states:

At no time shall any employee who serves in a supervisory position directly or indirectly solicit or accept any tip or gratuity from an employee under their supervision, or any other employee, at the premises where they are employed, *nor participate in any distribution of the said gratuities or tips in any manner or form whatsoever.* (emphasis supplied)

Contrary to plaintiffs' contention, reading the statute and regulation together in order to give effect to both, we conclude that the regulation was adopted to amplify the statutory limitations on gratuities and, thus, to preclude supervisory employees from benefiting in any manner from the tips. Supervisors retain only the authority to establish criteria for distribution of the gratuities among nonsupervisory employees.

Thus, we agree with the trial court's ruling that the Casino did not violate the statute or regulation by implementing a plan for the distribution of dealer tips to bar and cage employees. Hence, to the extent that summary judgment was granted on this claim, the court's ruling was correct.

## B.

█ In the alternative, plaintiffs contend that the Casino violated the statute by implementing the new tip distribution policy prior to filing it with the Division of Gaming. Again, we disagree.

Section 12–47.1–820 requires that licensed retailers establish criteria for tip distribution "in advance." However, there is no requirement that the policy be on file with the Division before it is implemented.

## II.

Plaintiffs next contend that, given their contention that they had a duty to report any suspected violation of the Act, the court erred in dismissing their retaliatory discharge claim. We agree.

■ Summary judgment is appropriate where the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as to any material fact. C.R.C.P. 56(c); *Civil Service Commission v. Pinder,* 812 P.2d 645 (Colo.1991). On appeal, our review of the propriety of summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995). And, in assessing whether a genuine issue of material fact exists, any doubt must be resolved against the Casino, as the moving party, and in favor of plaintiffs. *See Mancuso v. United Bank,* 818 P.2d 732 (Colo.1991).

### A.

As pertinent here, in *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992), our Supreme Court upheld a claim for the wrongful discharge of an at-will employee where the discharge was in retaliation for the employee's performance of an important public obligation. *See Rocky Mountain Hospital & Medical Service v. Mariani,* 916 P.2d 519 (Colo.1996) (accountant terminated for refusing to violate professional codes stated a claim for wrongful discharge); *see also Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367 (Colo.App.1989) (employee discharged for filing a workers' compensation claim stated a claim for wrongful discharge). In limited circumstances, the source of the public policy may be an administrative regulation. *Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540 (Colo.1997).

Here, Colorado Gaming Regulation No. 47.1–402, 1 Code Colo. Reg. 207–1, states:

> Each licensee must immediately notify the Division of the discovery of a violation *or of a suspected violation* of article 47.1 of title 12, C.R.S., or the rules and regulations promulgated thereunder. (emphasis supplied)

We hold that, although this duty is created by a regulation rather than statute, the public policy supporting the adoption of this regulation is such that retaliation for its exercise triggers the remedies recognized in *Martin Marietta.*

Specifically, the regulation was adopted by the Gaming Commission in support of its duty to administer the Limited Gaming Act. *See* §12–47.1–302(1)(a), C.R.S.1997. In adopting that Act, the General Assembly declared as the relevant public policy that:

> the success of limited gaming is dependent upon public confidence and trust that licensed limited gaming is conducted honestly and ... free from criminal and corruptive elements.

Section 12–47.1–102(1)(a), C.R.S.1997. To that end, the General Assembly has also decreed that "strict regulation of all persons, locations ... and activities related to the operation of licensed gaming establishments ... " is necessary. Section 12–47.1–102(1)(b), C.R.S.1997.

■ Contrary to the Casino's contention, we view these policies as fully supporting the conclusion that the retaliatory discharge of an employee for reporting a suspected violation of the Limited Gaming Act or the regulations is of sufficient gravity that it may provide the basis for a claim for relief. *See Crawford Rehabilitation Services, Inc. v. Weissman, supra.*

Also contrary to the Casino's contention, we do not view the result that we reach here as inconsistent with *Farmer v. Central Bankcorporation,* 761 P.2d 220 (Colo.App.1988). There, a bank president claimed that he was discharged because he refused to negotiate a check based upon the overdraft provisions of the applicable statute. A division of this court held that the president had no claim because the defendants there established that the statute would not have been violated.

Here, in light of the express language of the regulation, it is unnecessary for plaintiffs to prove an actual statutory violation. Instead, it is sufficient to demonstrate that they in fact suspected that a violation of the Act or regulations had occurred and notified the Division of the suspected violation.

### B.

Here, as noted, plaintiffs alleged that they were fired in retaliation for reporting the new tip distribution policy to a Division gam-

ing officer because they suspected a violation of the Act and the regulation.

As an initial matter, we consider the duty to report suspected violations as being applicable to plaintiffs both as licensed dealers and as casino employees. *See* Colorado Gaming Regulation No. 47.1–106(18), 1 Code Colo. Reg. 207–1.

Accordingly, to avoid entry of summary judgment, plaintiffs had to demonstrate that genuine factual issues existed as to whether they suspected that the policy violated the law and whether the terminations were in retaliation for the report to the Division.

On the first issue, plaintiffs each testified at deposition that, at the time the report was made, they suspected the tip policy violated the regulations. Further, the pit boss to whom plaintiffs initially reported the suspected violation also believed that the policy violated the regulations.

On the second issue, plaintiffs presented the affidavit of a pit boss, a member of management. The affidavit stated that all three plaintiffs complained to him about the new tip distribution policy. According to his deposition, that same evening, the pit boss saw plaintiff Webster involved an a conversation with an officer from the Division. The officer left with a copy of a tip sheet.

According to the pit boss, he told a supervisor that the Plaintiffs had complained about the tip distribution policy and that they would "probably go to gaming." Further, in his affidavit, the pit boss stated that plaintiffs were fired the following day "because they reported the casino's gaming violation."

While defendants presented evidence in conflict with the above version of events, as well as evidence that plaintiffs had been fired for poor job performance, this simply demonstrated that this was an issue of material fact that precluded entry of summary judgment. *See Mancuso v. United Bank of Pueblo, supra.*

### C.

Defendants also contend that the termination decision was made by a senior supervisor who did not even know about the report until after plaintiffs were fired.

Plaintiffs, however, point to the deposition testimony of the pit boss who indicated that he told the first supervisor about plaintiffs' concerns *before* the termination decision was made. They also rely upon evidence that the termination decision was made jointly with the senior supervisor.

As a result, the court erred in granting summary judgment on this issue.

Accordingly, to the extent that the judgment reflects a determination that the tip distribution policy is not a violation of the gaming act and that the timing of its implementation was permissible under the act, it is affirmed.

As to the portion of the judgment determining that no material issues of fact exist as to plaintiffs' wrongful discharge claim, the judgment is reversed, and the cause is remanded for further proceedings on that claim.

Judge CASEBOLT and Judge ROY concur.