Tina M. **FLORES**, Plaintiff–Appellee,

v.

**AMERICAN PHARMACEUTICAL SERVICES, INC., a Delaware corporation, Defendant–Appellant.**

No. 98CA0158.

Colorado Court of Appeals,
Div. III.

July 8, 1999.

Rehearing Denied Sept. 2, 1999.

Certiorari Denied Feb. 28, 2000.

Law Offices of Jeffrey I. Sandman, Jeffrey I. Sandman, Englewood, Colorado, for Plaintiff–Appellee.

Miles, McLaren & Peters, P.C., Nancy P. Tisdall, Amy K. Bailey, Denver, Colorado; Barry D. Epstein, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

In this action for damages for wrongful termination of employment in violation of public policy brought by plaintiff, Tina M. Flores, defendant, American Pharmaceutical Services, Inc., appeals the judgment entered on a jury verdict in favor of plaintiff. Defendant contends that the trial court erred in denying its motion for a directed verdict. We affirm.

Plaintiff was employed by defendant as a computer system support coordinator beginning in December 1993. During March 1996, she overheard a conversation in defendant's Denver pharmacy between the area sales manager and one of its pharmacy technicians. According to plaintiff, the area sales manager asked the pharmacy technician if he had remembered to bill a certain prescription to defendant's health insurance provider and stated that the insurance company "will never know they are paying for a cancer drug for a dog."

The following day, plaintiff overheard another conversation between the same pharmacy technician and a staff pharmacist. Plaintiff claims that the staff pharmacist explained to the pharmacy technician that what he was asked to do was illegal and that no prescription was going to be sent to the insurance company with her initials on it. The staff pharmacist also told the pharmacy technician that he would not commit an illegal act with her license connected to it.

Subsequently, the staff pharmacist provided plaintiff with a prescription number and asked her to obtain all information about the prescription. After acquiring the information, plaintiff contacted a supervisor and informed him of these incidents.

On June 4, 1996, plaintiff was terminated. The purported reason given for her termination was her inappropriate use of the computer system in accessing confidential information without management approval. Also, according to defendant, it considered it serious misconduct for plaintiff to take matters into her own hands and access confidential patient information without management direction.

Plaintiff then filed a complaint seeking compensatory and exemplary damages for certain claims including one for wrongful discharge for violation of public policy. Her claim for wrongful discharge was tried to the jury.

At the close of plaintiff's case, defendant moved for a directed verdict, but the court denied the motion. The jury found for plaintiff and awarded her damages in the amount of $207,830. This appeal followed.

## I.

Defendant asserts that the trial court erred in failing to grant its motion for directed verdict as a matter of law because the statute relied upon by plaintiff to establish the public policy exception to the at-will employment doctrine merely states a general interest of the public in combating insurance fraud and is otherwise not specifically applicable to the facts of this case. We disagree.

■ Directed verdicts are not favored. Indeed, a motion for directed verdict can be granted only where the evidence, when so considered, compels the conclusion that reasonable persons could not be in disagreement and that no evidence, or legitimate inference arising therefrom, has been presented upon which a jury's verdict against the moving party could be sustained. *Rocky Mountain Hospital & Medical Service v. Mariani*, 916 P.2d 519 (Colo.1996).

■ In evaluating a trial court's ruling on a motion for directed verdict, we must determine whether there is evidence of sufficient probative force to support the trial court's ruling. *Evans v. Webster*, 832 P.2d 951 (Colo.App.1991).

■ In so doing, we must consider all of the facts in the light most favorable to the non-moving party and must determine whether a reasonable jury could have found in favor of the non-moving party. *Rocky Mountain Hospital & Medical Service v. Mariani, supra.*

### A.

■ In its opening brief, defendant asserts that, in order to prevail, plaintiff must prove under *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo.1992) that:

(1) [defendant] directed [her] to perform an illegal act as part of her work-related duties or prohibited her from performing a public duty or exercising an important job-related right or privilege;

(2) the action directed by [defendant] would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to [her] basic responsibility as a citizen or her right or privilege as a worker;

(3) [defendant] discharged [plaintiff] as a result of refusing to perform the act directed by [defendant]; and

(4) [defendant] was aware, or reasonably should have been aware, that [plaintiff's] refusal to comply with [defendant's] order or directive was based on her reasonable belief that the action ordered by [defendant] was illegal, contrary to a clearly expressed statutory policy relating to her duty as a citizen, or violative of her legal right or privilege as a worker.

Thus, defendant contends that a directed verdict was required because there was no evidence that it had directed plaintiff not to report the information to any government agency, law enforcement agency, or insurance company or that it had ordered or prohibited her from performing any public duty or from exercising any important job related right. However, in arguing its motion for directed verdict, defendant did not articulate such arguments to the trial court.

■ C.R.C.P. 50, in part, provides that a motion for a directed verdict shall state the specific grounds therefor. An appellate court will not consider issues, arguments, or theories not previously presented in trial proceedings. *In re Custody of C.C.R.S.*, 872 P.2d 1337 (Colo.App.1993), aff'd, 892 P.2d 246 (Colo.1995).

Here, in moving for a directed verdict defendant stated that it maintained its position in the motion for summary judgment that the case did not state a claim for public policy wrongful discharge. However, it did not elaborate further. It then drew the court's attention to *CJI–Civ.3d* 31:10 (1998 Supp.), the instruction that was ultimately given to the jury. In doing so, defendant argued that the elements of a public policy wrongful discharge were four. Three of these elements were: that plaintiff was employed by defendant (which defendant conceded); that defendant discharged the plaintiff (which defendant also conceded); and that defendant discharged plaintiff because she reported to defendant the alleged fraud of another employee.

As to the third element, defendant acknowledged that there was evidence on the issue of suspected fraud. It argued, however, that plaintiff had to show that her reporting of fraud was a substantial or motivating factor in the decision to discharge her and also argued that there was no evidence concerning the insurance statute.

While defendant argued there was a big difference between the general term "insurance fraud" and establishment of a critical element of public policy which flows from that under the *Mariani* and *Lorenz* cases, defendant's principal arguments were that the jury had to be advised of the public policy upon which plaintiff was relying and that there had been no evidence about the insurance statute at issue and its applicability to plaintiff.

Consequently, our review will be limited to the issues that follow.

### B.

■ Defendant asserts that § 10–1–127(1.5)(a), C.R.S.1998, the statute relied upon by plaintiff, has no application to the facts of this case and is insufficient to support her wrongful discharge claim. We disagree.

Section 10–1–127(1.5)(a) provides that:

The general assembly finds and declares that insurance fraud is expensive. Insurance fraud increases premiums and places businesses at risk. Insurance fraud reduces consumers' ability to raise their standard of living and decreases the economic vitality of this state. The general assembly further finds and declares that the state of Colorado must aggressively confront the problem of insurance fraud by facilitating the detection of and reducing the occurrence of fraud through stricter enforcement and deterrence and by increasing the partnership among consumers, the insurance industry, and the state in coordinating efforts to combat insurance fraud.

■ The identification of the statutory provisions that qualify as clear expressions of public policy is a matter for judicial determination. *Rocky Mountain Hospital & Medical Service v. Mariani, supra.*

The public-policy exception to the at-will employment doctrine is grounded on the principle that an employer should be prohibited from discharging an employee for reasons that contravene substantial and widely accepted public policies. Although public-policy wrongful discharge is not subject to precise definition, it has been variously described as an action relating to a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer, or strikes at the heart of a citizen's social rights, duties, and responsibilities. *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540 (Colo.1997).

■ Statutes by their nature are the most reasonable and common sources for defining public policy. Any public policy must serve the public interest and be sufficiently concrete to notify employers and employees of the behavior it requires. Therefore, the provision must provide a clear mandate to act or not to act in a particular way. *Rocky Mountain Hospital & Medical Service v. Mariani, supra.*

Although the trial court recognized that the question whether a statute qualifies as a

clear expression of public policy is a matter of law and asked whether there was a duty to report insurance fraud, it denied defendant's directed verdict without making this determination.

Here, defendant asserts that the statute on which plaintiff relies created no specific duty on her either to do or not do anything, and that plaintiff did not contact any government or law enforcement agency or insurance company about the suspected fraud. Therefore, defendant contends that, even if plaintiff was terminated for reporting to her employer and investigating the fraud alleged to have been perpetrated by a co-worker, there remains nothing specific in the statute relied on and no actions taken specifically in compliance therewith on which a claim for wrongful termination can be based. We disagree.

In *Rocky Mountain Hospital & Medical Service v. Mariani, supra*, an at-will employee testified that she discovered and complained to her supervisors about questionable accounting practices. The supreme court concluded that she had established a *prima facie* case of wrongful discharge under *Martin Marietta v. Lorenz.* It also stated that if the employee objected to the accounting practices and did not participate in them or by inaction declined to undertake them, she satisfied the refusal component of *Lorenz.* Thus, under *Mariani*, plaintiff's claim does not fail for not having been reported to an outside agency.

Further, § 10–1–127(1.5)(a) indicates that insurance fraud is the type of behavior that truly impacts the public because it increases premiums, places businesses at risk, reduces consumers' ability to raise their standard of living, and decreases the economic vitality of the state. *See Crawford Rehabilitation Services, Inc. v. Weissman, supra.* Also, while § 10–1–127(1.5)(a) does not explicitly require employees or citizens to take an active part in ferreting out insurance fraud, the act encourages its exposure and detection. *See Martin Marietta Corp. v. Lorenz, supra* (the manifest public policy of this state is that neither an employer or an employee should be permitted to perpetrate a fraud or deceptions on the federal or state government).

Thus, § 10–1–127(1.5)(a) serves the public interest and justifies interference with defen-

dant's business decision to retaliate against plaintiff for performing her obligation to expose suspected insurance fraud. *See Webster v. Konczak Corp.,* 976 P.2d 317 (Colo.App. 1998).

The General Assembly has provided a clear mandate to all persons that it is unlawful in Colorado to defraud insurance companies. *See Rocky Mountain Hospital & Medical Service v. Mariani, supra.*

Therefore, we conclude that § 10–1–127(1.5)(a) is a clear expression of public policy sufficient to support plaintiff's retaliatory discharge claim.

## II.

Finally, because defendant's arguments relying on other statutory provisions were not presented to the trial court as bases for the motion for a directed verdict, we decline to consider them on review. *See In re Custody of C.C.R.S., supra.*

Accordingly, the judgment is affirmed.

Judge JONES and Judge ROY concur.