Debbie BONIDY, Plaintiff–Appellant and Cross–Appellee,

v.

VAIL VALLEY CENTER FOR AESTHETIC DENTISTRY, P.C., and James J. Harding, DDS, Defendants–Appellees and Cross–Appellants.

No. 06CA1849.

Colorado Court of Appeals, Div. III.

Jan. 10, 2008.

Leavenworth & Karp, P.C., Sander N. Karp, Anna S. Itenberg, Glenwood Springs,

Colorado, for Plaintiff–Appellant and Cross–Appellee.

Stevens, Littman, Biddison, Tharp & Weinberg, LLC, Mark E. Biddison, Boulder, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge TAUBMAN.

Plaintiff, Debbie Bonidy, appeals the judgment of the trial court directing a verdict on her claims for wrongful discharge in violation of public policy and for exemplary damages. Bonidy additionally appeals the trial court's decision to exclude certain testimony offered to support her wrongful discharge claim. Defendants, Dr. James J. Harding and Vail Valley Center for Aesthetic Dentistry, P.C. (VVCAD), cross-appeal the trial court's decision awarding only some of their requested costs. We reverse and remand for further proceedings.

## I. Background

Dr. Harding hired Bonidy to help start VVCAD in September 1998. She was employed as his dental assistant and VVCAD's office manager. Approximately a year after Bonidy was hired, Dr. Harding changed the work schedule and required his employees to work without rest or lunch breaks unless a patient canceled an appointment.

On July 28, 2004, Dr. Harding met with Bonidy and informed her that the work schedule once again had changed: the employees were no longer permitted to leave the office, except to use the restroom, even if a patient canceled his or her appointment. That night, Bonidy explained the new work schedule policy to her husband, who then e-mailed Dr. Harding, asserting that he was violating the law by not providing his employees with rest and lunch breaks. After returning from vacation on August 10 and reading the e-mail, Dr. Harding promptly fired Bonidy.

Bonidy filed suit against Dr. Harding and VVCAD. Her claim for wrongful discharge in violation of public policy was based upon not receiving rest and lunch breaks in violation of Wage Order No. 22, sections 7 and 8, promulgated by the Colorado Department of Labor and Employment. *Cf.* Wage Order No. 23, 7 Code Colo. Regs. 1103–1 (effective from Apr. 1, 2007 until Jan. 1, 2008, when Wage Order No. 24 takes effect; sections 7 and 8 of all three wage orders are the same).

A jury trial held in July 2006 ended when the trial court granted defendants' motion for a directed verdict. Although the trial court found that defendants had violated the provisions of two administrative regulations concerning rest and lunch breaks, it dismissed Bonidy's claims for wrongful discharge in violation of public policy and exemplary damages. The trial court later awarded some of defendants' requested costs. This appeal and cross-appeal followed.

## II. Standard of Review

Although defendants moved for a directed verdict at the end of Bonidy's case-in-chief, she argues that the trial court treated the motion as one to dismiss. We disagree.

At the end of the trial court's ruling, it concluded, "based on *Crawford [Rehab. Servs., Inc. v. Weissman,* 938 P.2d 540 (Colo. 1997) ], the Court finds that the motion to dismiss for failure to state a claim upon which relief should be granted, the Court grants the motion." As we read the record, however, we conclude that the trial court merely misspoke because it also referred to the motion as one pursuant to C.R.C.P. 50, the rule governing directed verdicts, throughout its bench ruling. Accordingly, we conclude the trial court granted defendants' motion for a directed verdict when it dismissed Bonidy's claims.

"A court considering a motion for directed verdict must view the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party." *Bryant v. Cmty. Choice Credit Union,* 160 P.3d 266, 271 (Colo.App.2007). "If the evidence viewed in this light cannot support a verdict in favor of the nonmoving party, the court may grant a motion for directed verdict and the issue should not be submitted to the jury." *Id.*

We review a trial court's decision granting a motion for a directed verdict under the de novo standard of review. *City of*

*Westminster v. Centric–Jones Constructors,* 100 P.3d 472, 477 (Colo.App.2003). "In evaluating a trial court's ruling on a motion for directed verdict, we must determine whether there is evidence of sufficient probative force to support the trial court's ruling." *Flores v. Am. Pharm. Servs., Inc.,* 994 P.2d 455, 457 (Colo.App.1999). "In so doing, we must consider all of the facts in the light most favorable to the [nonmoving] party and must determine whether a reasonable jury could have found in favor of the [nonmoving] party." *Id.*

### III. Wrongful Discharge in Violation of Public Policy

Bonidy contends the trial court erred in two ways in dismissing her claim for wrongful discharge in violation of public policy. First, she asserts the trial court erred when it concluded that the determination of whether Wage Order No. 22 constituted a clearly expressed public policy was a question of law. Second, she maintains the trial court erred when it ruled that Dr. Harding's violation of Wage Order No. 22 did not give rise to a private cause of action. We disagree with her first contention but agree with the second.

■ The Colorado Supreme Court first recognized a cause of action under the public policy exception to the at-will employment doctrine in *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992). To establish a prima facie case of wrongful discharge in violation of public policy, an at-will employee must present evidence that (1) "the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege"; (2) "the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker"; (3) "the employee was terminated as the result of refusing to perform the act directed by the employer"; and (4)

the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

*Id.* at 109.

■ With respect to the second element of the prima facie case for wrongful discharge in violation of public policy, "[a]dministrative regulations may be sources of public policy in limited circumstances." *Crawford,* 938 P.2d at 553. However, "Not all potential sources of public policy are of sufficient gravity to outweigh the precepts of at-will employment." *Id.*

### A. Question of Law or Fact

■ As noted, Bonidy argues the trial court erred when it concluded that the determination of whether Wage Order No. 22 constituted a clearly expressed public policy was a question of law. Bonidy maintains that such a determination is a question of fact, which should have been resolved by the jury. We disagree.

Addressing this issue, the trial court relied on three cases—*Crawford,* 938 P.2d 540; *Hoyt v. Target Stores,* 981 P.2d 188 (Colo. App.1998); and *Flores,* 994 P.2d 455. The court explained that *Crawford* suggests that the clearly expressed public policy determination is a question of law. The trial court acknowledged that, in *Hoyt,* the question of whether receiving compensation for travel time was an important work-related right or privilege was submitted to the jury, implying that such a determination was a question of fact. Finally, the court explained that *Flores* "flat out says that it is a matter of law to be determined by the Court."

■ We agree with the trial court's analysis. "The identification of the statutory provisions that qualify as clear expressions of public policy is a matter for judicial determination." *Flores,* 994 P.2d at 458. Consequently, the trial court did not err when it

concluded that whether Wage Order No. 22 constituted a clearly expressed public policy was a question of law.

### B. Wage Order No. 22 as a Basis for a Public Policy Wrongful Discharge Claim

■ Bonidy next asserts that the trial court erred when it ruled that defendants' violation of Wage Order No. 22, sections 7 and 8, did not give rise to a private cause of action. We agree.

The General Assembly authorized the creation of the Department of Labor and Employment, Division of Labor, § 24-1-121(3), C.R.S.2007, and provided the Department with the power to promulgate regulations. See § 24-1-121(1), C.R.S.2007. Specifically, the Division of Labor "serve[s] and protect[s] the interests of Colorado employees, employers, and the general public through the responsible administration, regulation, and enforcement of Colorado labor laws." Div. of Labor Mission Statement, http://www.coworkforce.com/MissionStatement.asp (last visited Dec. 19, 2007).

Among the regulations promulgated by the Division of Labor are wage orders. When Bonidy brought suit against defendants, the most current wage order was Wage Order No. 22. Section 7 provided, "Employees shall be entitled to an uninterrupted and 'duty free' meal period of at least a thirty-minute duration when the scheduled work shift exceeds five consecutive hours of work." Section 8 stated, "Every employer shall authorize and permit rest periods, which, insofar as practicable, shall be in the middle of each four (4) hour work period. A compensated ten (10) minute rest period for each four (4) hours or major fractions thereof shall be permitted for all employees."

Wage Order No. 22, section 5, exempted from its provisions certain employees and occupations, such as executives and professionals. However, the wage order, sections 1(D) and 2(D), expressly stated it applied to dental office employees, including office personnel, like Bonidy. Accordingly, we conclude Wage Order No. 22 embodies a clearly expressed public policy as it relates to Bonidy's job description and duties as a dental assistant.

In dismissing Bonidy's claim for wrongful discharge in violation of public policy, the trial court relied on Crawford and Bonidy's job description and duties.

In Crawford, the plaintiff, a clerical typist, asserted a claim for wrongful discharge in violation of public policy based upon a wage order similar to Wage Order No. 22, section 8, providing employees were entitled to take a ten-minute rest break for every four hours of work. See 938 P.2d at 551–53. The court concluded that the plaintiff failed to set forth a cause of action for wrongful discharge in violation of public policy because she did "not allege any public health, safety, or welfare concern, and we discern no clearly expressed public policy relating to an employee's basic rights or duties." Id. at 553 (footnote omitted). Additionally, the court noted that the plaintiff did "not allege that she was employed in a position that could implicate public safety concerns if she were not permitted to have a certain number and frequency of breaks." Id. at 553 n. 17.

However, unlike the plaintiff in Crawford, Bonidy alleged and presented evidence that she was employed in a position that implicated public safety if she were not permitted to have rest and lunch breaks. Specifically, on direct examination, Bonidy described in detail her dental assistant and office manager job duties as: sterilizing instruments, preparing the examination room for patients, cleaning the examination room after the examination of each patient, preparing cementation mixtures for crowns and fillings, taking x-rays, preparing impression materials, performing lab work, assisting Dr. Harding during patient examinations, checking patients in and out, preparing insurance information, and answering phones. Moreover, Bonidy testified that she passed sharp instruments to Dr. Harding over patients' heads, and, that without rest or lunch breaks, she could have adversely affected the quality of patient treatment.

Contrary to defendants' contention, Crawford is distinguishable from this case. First, the Crawford plaintiff's claim for wrongful discharge in violation of public policy was

based upon not receiving rest breaks, whereas Bonidy was not provided with either rest or lunch breaks, despite sometimes working more than ten hours per day. Second, as noted, the *Crawford* plaintiff failed to allege that she was employed in a position that implicated public safety, whereas Bonidy presented evidence that the safety of patients, and thus the public, could be jeopardized if she did not receive rest and lunch breaks. *See generally* Ian Gurney, *Give Me a Break,* BMJ Career Focus (Aug. 19, 2006), *available at* http://careerfocus.bmj.com/cgi/content/full/333/7564/76 (discussing the increased risks associated with employees not receiving lunch breaks and rest breaks within the medical field and the airline industry).

Accordingly, Wage Order No. 22 constituted a clearly expressed public policy relating to *certain* employees' basic rights. Because Wage Order No. 22 applied to a person with Bonidy's job description and duties, and the Division of Labor promulgates wage orders to protect the general public, we conclude that Bonidy presented sufficient evidence for the jury to decide her claim, and that the trial court erred when it ruled as a matter of law that defendants' violation of Wage Order No. 22, sections 7 and 8, did not give rise to a private cause of action for wrongful termination of employment. Accordingly, on remand, the trial court shall reinstate Bonidy's claim for wrongful termination in violation of public policy and conduct a new trial.

### IV. Exemplary Damages

Because we have concluded the trial court erred in dismissing Bonidy's wrongful discharge claim, we also reverse the trial court's dismissal of her exemplary damages claim. *See* § 13–21–102(1)(a), C.R.S.2007. Although the trial court indicated that a claim for exemplary damages must be based on a continuing course of conduct, we note that "[w]hile evidence of a continuing course of conduct may buttress a claim for exemplary damages, the absence of such evidence does not preclude such an award if the statutory elements are met by other sufficient proof." *Amber Props., Ltd. v. Howard Elec. & Mech. Co.,* 775 P.2d 43, 46 (Colo.App.1988).

On remand, if similar evidence is presented on retrial, followed by a motion for direct-ed verdict, the trial court must determine anew whether Bonidy presented sufficient evidence to present this claim to the jury.

### V. Exclusion of Testimony

Bonidy finally contends the trial court abused its discretion in excluding certain testimony from Dr. Harding's former dental hygienist concerning lack of rest and lunch breaks. We agree. "A trial court has considerable discretion in ruling upon the admissibility of evidence, and we will find an abuse of discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair." *Wark v. McClellan,* 68 P.3d 574, 578 (Colo. App.2003).

Here, Bonidy attempted to elicit testimony from a dental hygienist who had previously worked for VVCAD concerning how the lack of rest and meal breaks affected work performance at the dental office. The trial court excluded the testimony on the ground that the dental hygienist and Bonidy had different job duties. Although the two positions may have had different job duties, both positions' duties included treating patients, thereby implicating public safety.

We conclude the trial court's ruling was manifestly arbitrary and unreasonable, and, accordingly, the court abused its discretion. On remand, the trial court shall permit the dental hygienist to testify concerning how the lack of rest and meal breaks affected work performance at VVCAD.

### VI. Costs

In their cross-appeal, Dr. Harding and VVCAD contend the trial court erred when it denied certain of their requested costs without a hearing on reasonableness. Because this matter is remanded for a new trial on Bonidy's claims, we need not consider defendants' contention.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge ROY and Judge TERRY concur.