The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2018

## 2018COA17

**No. 16CA1864, *Brunson v. Colorado Cab Co.* — Labor and Industry — Wages — Colorado Minimum Wage Order — Exemptions**

In this appeal from a grant of summary judgment, a division of the court of appeals considers whether shuttle van drivers who transport passengers to and from Denver International Airport, but do not drive outside of the state, are considered to be "interstate drivers," and thus are exempt under the Colorado Minimum Wage Order from receiving overtime pay. The Colorado Minimum Wage Act, the Colorado Wage Claim Act, and the Colorado Minimum Wage Order do not define the term "interstate drivers."

"Interstate drivers" under federal law includes some drivers involved in interstate commerce whose work travel is entirely within the state. But the division concludes that the federal interpretation

of "interstate drivers" does not apply to the state claims at issue here because the federal and state overtime pay exemptions are not "identical or substantially so."  Relying on the Colorado Department of Labor and Employment's Advisory Bulletin as clear persuasive evidence of its intent to provide greater protections than those provided under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (2012), the division concludes that the term "interstate drivers" in the Wage Order applies only to drivers whose work takes them across state lines.  It thus reverses the grant of summary judgment.

Court of Appeals No. 16CA1864
City and County of Denver District Court No. 15CV31252
Honorable Ross B. Buchanan, Judge

_____

Daniel Brunson,

Plaintiff-Appellant,

v.

Colorado Cab Company, LLC, and Shamrock Charters, Inc.,

Defendants-Appellees.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE LICHTENSTEIN
Taubman and Kapelke*, JJ., concur

Announced February 8, 2018

_____

Law Office of Brian D. Gonzales, PLLC, Brian D. Gonzales, Fort Collins, Colorado, for Plaintiff-Appellant

Sherman & Howard, LLC, Patrick R. Scully, Matthew M. Morrison, Denver, Colorado; Morgan, Lewis & Bockius, LLP, Christopher A. Parlo, Melissa C. Rodriguez, Jason D. Burns, New York, New York, for Defendants-Appellees


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     This case addresses, as a matter of first impression, whether shuttle van drivers who transport passengers to and from Denver International Airport (DIA), but do not drive outside of the state, are considered to be "interstate drivers," and thus are exempt, under the Colorado Minimum Wage Order, from receiving overtime pay.

¶ 2     Plaintiff, Daniel Brunson, a shuttle van driver, appeals the district court's grant of summary judgment in favor of defendants, Shamrock Charters, Inc. and Colorado Cab Company, LLC, (collectively, Shamrock) on Brunson's claim[1] that Shamrock's failure to pay him overtime compensation violated the Colorado Minimum Wage Act, section 8-6-101, et seq., C.R.S. 2017, and the Colorado Wage Claim Act, section 8-4-101, et. seq., C.R.S. 2017 (the Acts).

---

[1] Brunson filed individual claims as well as claims on behalf of a putative class of persons similarly situated.  Only summary judgment on his individual claims is at issue here.  The record is unclear whether Brunson also worked as a driver for Colorado Cab Company, LLC, and our decision does not address any such employment.

¶ 3     The Acts are implemented by Colorado Minimum Wage Order 31 (Wage Order),[2] promulgated by the Colorado Department of Labor and Employment (the Department).  *See* Colo. Minimum Wage Order No. 31, 7 Code Colo. Regs. 1103-1 (effective Dec. 30, 2014-Dec. 31, 2015), https://perma.cc/PTD2-TSUN (hereinafter Wage Order).  The Wage Order regulates wages and requires certain employers to pay overtime compensation to its employees.  As pertinent here, the Wage Order exempts "interstate drivers" from all its provisions.  Wage Order § 5.

¶ 4     Neither the Acts nor the Wage Order implementing these Acts defines the term "interstate drivers."  The district court relied on federal law to conclude that "interstate drivers" includes drivers involved in interstate commerce, even if their work travel is entirely within the state.

¶ 5     But, because Colorado provides more employee protection than does federal law, and the Department has published clear

---

[2] Wage Order 31 implements the statutes for the year 2015.  As of the date of this opinion, subsequent wage orders have been issued, but the relevant language has not been changed.  *See* Colo. Minimum Wage Order No. 31, 7 Code Colo. Regs. 1103-1:1 (effective Dec. 30, 2014-Dec. 31, 2015), https://perma.cc/PTD2-TSUN (hereinafter Wage Order).

persuasive evidence of its intent to provide greater protections than those provided under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (2012), we conclude that federal case law's interpretation of "interstate drivers" does not apply to Brunson's state claims. We therefore reverse the court's summary judgment and remand the case for further proceedings on Brunson's claim.

## I.    Background

¶ 6    Shamrock operates the SuperShuttle van service to and from DIA. Brunson, as a SuperShuttle driver, transports passengers between DIA and their homes, hotels, or a transportation hub location. Brunson claims that he was entitled to overtime pay. Shamrock contends that Brunson was exempt from the overtime pay requirements of the Wage Order.

¶ 7    In granting summary judgment for Shamrock, the district court found that the Wage Order's language closely follows the federal Motor Carrier Act (MCA) exemption of the FLSA. It therefore relied on federal case law interpreting the MCA exemption to conclude that although Brunson's shuttle driving remained within state lines, his driving involved interstate commerce, and, thus, he

was an "interstate driver."  As a matter of law, therefore, Brunson was exempt from the Wage Order's overtime pay requirements.

¶ 8  In rejecting Brunson's state law claims, the district court drafted a thorough and well-reasoned summary judgment order interpreting the Wage Order consistent with the federal MCA exemption.  However, Brunson contends, and we agree, that the federal interpretation of the MCA exemption does not apply to his state claims.

## II.  Standard of Review

¶ 9  We review de novo the grant of a motion for summary judgment.  *Grippin v. State Farm Mut. Auto. Ins. Co.*, 2016 COA 127, ¶ 8.  Summary judgment is appropriate only when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law.  C.R.C.P. 56(c); *Chase v. Farmers Ins. Exch.*, 129 P.3d 1011, 1014 (Colo. App. 2004).

¶ 10  We also review administrative regulations de novo.  Our primary task in this review is to give effect to the promulgating body's intent.  *See Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 22 (Colo. App. 2010).  In construing an administrative regulation, we apply the same rules of construction that we would

apply in interpreting a statute. *Berumen v. Dep't of Human Servs.*, 2012 COA 73, ¶ 19; *see also Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 527 (Cal. 2012) ("When a wage order's validity and application are conceded and the question is only one of interpretation, the usual rules of statutory interpretation apply."). And as with statutes, if the language of a regulation is clear and unambiguous, we do not resort to other rules of construction. *Berumen*, ¶ 19.

¶ 11     But if the language of a regulation or administrative rule is ambiguous or unclear, we may consider an agency's interpretation of its own regulation or rule. *Sierra Club v. Billingsley*, 166 P.3d 309, 312 (Colo. App. 2007); *see also Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) ("[D]eference [to an agency's interpretation of its own regulation] is warranted only when the language of the regulation is ambiguous.").

¶ 12     When a promulgating body provides an interpretation contained in other formats, such as opinion letters, internal agency guidelines, manuals or bulletins — all of which lack the force of law — such interpretations are "entitled to respect," but only to the extent that those interpretations have the "power to persuade."

5

*Christensen,* 529 U.S. at 587 (citation omitted); *see Preserve at the Fort, Ltd. v. Prudential Huntoon Paige Assocs.*, 129 P.3d 1015, 1020 (Colo. App. 2004).

### III.    Discussion

¶ 13    The General Assembly has given the Department the power to promulgate regulations, among them wage orders.  *Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.*, 186 P.3d 80, 84 (Colo. App. 2008); *see* § 24-1-121(1), C.R.S. 2017.  A wage order "regulates the 'wages, hours, working conditions and procedures' for certain employers and employees performing work in Colorado."  *Chase,* 129 P.3d at 1012 (quoting Colo. Wage Order No. 22).

¶ 14    The Wage Order, by its own terms, applies only to work performed "within the boundaries of the state of Colorado."  Wage Order § 1.  Among its provisions, and as relevant here, the Wage Order requires covered employers to pay overtime at one-and-one-half times the employee's normal rate of pay.  *Id.* § 4.  The Wage Order also exempts several categories of employees from all its

provisions.[3]  Among those exempt, the Wage Order lists "interstate drivers."  *Id.* § 5.  The Wage Order does not define who qualifies as an "interstate driver."

¶ 15     When the terms at issue are not defined, we look to the plain meaning of the language used, considered within the context of the regulation as a whole.  *See Berumen*, ¶ 19.  If the plain meaning of the language of a regulation is clear and unambiguous, we need not look further.  *Id.*  But if the words chosen by the enacting body are capable of two or more constructions leading to different results, the regulation is ambiguous.  *See State v. Nieto*, 993 P.2d 493, 500-01 (Colo. 2000) (discussing ambiguous statutory language).

¶ 16     When the language is ambiguous, we look beyond the express regulatory language for other evidence of the promulgating body's intent and purpose.  *See Crandall v. City & Cty. of Denver*, 238 P.3d 659, 662 (Colo. 2010); *Sierra Club*, 166 P.3d at 312.

---

[3] Although the Wage Order includes a specific section titled, "Exemptions from Overtime," this section does not reference "drivers," other than to generally exempt employees of the medical transportation industry.  Wage Order § 6.

## A. The Wage Order's Language Is Ambiguous

¶ 17     Considered in the context of the regulation as a whole, it would seem reasonable to construe the categorical exemption of "interstate drivers" from the Wage Order's provisions as applying only to drivers who cross state lines.  After all, the Wage Order's coverage provision states that it regulates wages for work performed within state boundaries.  *See* Wage Order § 1.

¶ 18     It is also reasonable to construe the term "interstate drivers" as drivers whose transport — within state lines — involves interstate commerce.[4]  Since the disputed term "interstate driver" is susceptible of more than one reasonable meaning, it is ambiguous.

¶ 19     We therefore look beyond the express language for other evidence of the promulgating body's intent and purpose.  *See Crandall*, 238 P.3d at 662.

---

[4] This latter construction, as discussed later in this opinion, is analogous to that employed in several federal cases interpreting the MCA's overtime pay exemption of the FLSA to apply to certain drivers who, despite working entirely intrastate, transport goods or persons in interstate commerce.

## B. Federal Law Is Not Instructive

¶ 20    As the district court noted, there is a body of federal law that interprets interstate drivers in the FLSA for purposes of the exemption from receiving overtime pay.  Under that interpretation, certain drivers who work entirely within a state are considered interstate drivers under the MCA exemption of the FLSA, and are thus exempt from the federal statute's overtime pay provisions.  For the following reasons, we conclude that federal law is neither controlling nor persuasive.

¶ 21    First, it is well settled that states may provide employees with benefits beyond those set out in the FLSA.  *Idowu v. Nesbitt*, 2014 COA 97, ¶ 51.  "The FLSA sets a floor, not a ceiling, on compensation that employees must receive."  *Id.* (quoting *Barefield v. Vill. of Winnetka,* 81 F.3d 704, 711 (7th Cir. 1996)); *see Martinez v. Combs*, 231 P.3d 259, 280-81 (Cal. 2010) ("Courts must give . . . wage orders independent effect in order to protect the commission's delegated authority to enforce the state's wage laws and, as appropriate, to provide greater protection to workers than federal law affords.").

¶ 22    The Department did just that here: it promulgated a wage order independent of the FLSA, expressly stating that the Wage Order shall apply instead of the FLSA when it provides greater protection than the FLSA affords.  *See* Wage Order Introduction ("If an employee is covered by both state and federal minimum wage laws, the law which provides a higher minimum wage or sets a higher standard shall apply."); Wage Order § 22 (addressing "Dual Jurisdiction").

¶ 23    Second, exemptions, such as the overtime pay exemption, should be construed narrowly.  *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) (where "a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision"); *see also Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1161 (10th Cir. 2016) ("Because it is an exemption, the court should construe it narrowly.").

¶ 24    And finally, although federal law may be instructive when interpreting a Colorado statute, its helpfulness is limited to those instances "where the state and federal statutes are identical or substantially so."  *Colonial Bank v. Colo. Fin. Servs. Bd.*, 961 P.2d

579, 583 (Colo. App. 1998); *see Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 399 (Colo. 1997) (federal law is helpful when the language of the Colorado law closely parallels that of its federal counterpart).

¶ 25    Here, the Wage Order's exemption of "interstate drivers" from "all its provisions" does not resemble, much less closely parallel, the MCA overtime pay exemption to the FLSA.

¶ 26    Section 5 of the Wage Order states,

> The following employees or occupations, as defined below, are exempt from all provisions of Minimum Wage Order No. 31: administrative, executive/supervisor, professional, outside sales employees, and elected officials and members of their staff. Other exemptions are: companions, casual babysitters, and domestic employees employed by households or family members to perform duties in private residences, property managers, *interstate drivers*, driver helpers, loaders or mechanics of motor carriers, taxi cab drivers, and bona fide volunteers. Also exempt are: students employed by sororities, fraternities, college clubs, or dormitories, and students employed in a work experience study program and employees working in laundries of charitable institutions which pay no wages to workers and inmates, or patient workers who work in institutional laundries.

(Emphasis added.)

11

¶ 27    In contrast, the MCA exemption of the FLSA, 29 U.S.C. § 213(b)(1) (2012), provides that the overtime pay requirement for employees engaged in commerce shall not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service."

¶ 28    While Colorado's Wage Order lists interstate drivers as exempt employees, the MCA overtime pay exemption of the FLSA does not list "interstate drivers" at all. Instead, the MCA exemption references employees involved in interstate commerce, *see* 29 U.S.C. § 207 (2012), and then exempts from overtime pay "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1).

¶ 29    Federal courts have reviewed this language regarding the Secretary of Transportation's power to determine the extent to which, and what type of, employees fall under the exemption. Several of these courts have concluded that the MCA exemption includes certain employees who "move goods in interstate commerce." *See, e.g., Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993). And this category of employees, in turn, has

been interpreted to include not only those involved in interstate travel, but also those involved in the intrastate delivery of goods if the essential character of the shipment is interstate in nature. *See Deherrera*, 820 F.3d at 1154-55 (interpreting the MCA overtime pay exemption); *see also Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1216 (11th Cir. 2011) (concluding that the MCA overtime pay exemption applies to the "intrastate transport of passengers to and from an airport" under certain circumstances).

¶ 30   Thus, the force of the overtime pay exemption under the MCA relies on the Secretary of Transportation's power to regulate the maximum hours of employees engaged in interstate commerce. *Deherrera*, 820 F.3d at 1154-55. But, in Colorado, the Wage Order exemption does not mention the power of the Secretary of Transportation, much less depend on whether a driver was engaged in interstate commerce.

¶ 31   Given the contextual differences of the MCA exemption and Colorado's Wage Order, we are not persuaded that the federal case law interpreting interstate driver is instructive. *See N. Colo. Med. Ctr. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 905-06 (Colo. 1996). We note that in *Deherrera*, the Tenth Circuit reached

an opposite conclusion. It did so by construing the exemption for "interstate drivers" in Colorado's Wage Order harmoniously with the FLSA's MCA exemption. There, the court supported its application of federal law to the Wage Order by observing that "many of the Wage Order's provisions (including the overtime exemptions) are patterned largely after the FLSA." *Id.* at 1161.

¶ 32     However, we do not perceive the similarities identified by *Deherrera* as demonstrating a sufficiently close parallel between the state and federal overtime pay exemption provisions. *See Colonial Bank,* 961 P.2d at 583; *see also Colo. Civil Rights Comm'n,* 940 P.2d at 399. True, as *Deherrera* observed, the Wage Order and the FLSA include exemptions that similarly list "administrative, executive, professional and sales employees." 820 F.3d at 1161. Notably, the Wage Order includes "interstate drivers" in its list, whereas the FLSA does not. Also significant, the FLSA's list of these employees does not appear in the federal MCA exemption for overtime pay. *See* 29 U.S.C. § 213(b)(1). Rather, the FLSA lists these employees in a separate exemption provision altogether. *See* 29 U.S.C. § 213(a)(1).

¶ 33    Thus, because the federal and state overtime pay exemptions are not "identical or substantially so," *see Colonial Bank*, 961 P.2d at 583, we are not persuaded to "accord great weight" to the federal construction of the MCA exemption. *See Deherrera*, 820 F.3d at 1161.

¶ 34    For these reasons, we decline to adopt the district court's reliance on federal case law, and more specifically its reliance on the Tenth Circuit's *Deherrera* opinion. Even the Tenth Circuit has observed that "*Deherrera*'s understanding of Colorado law could, of course, be reexamined in light of subsequent relevant state court decisions." *Combs v. Jaguar Energy Servs., LLC*, 683 F. App'x 704, 708 (10th Cir. 2017); *see also Dillabaugh v. Ellerton*, 259 P.3d 550, 553 (Colo. App. 2011) ("We are not required to follow an intermediate federal court's interpretation of state law.").

¶ 35    Because we have determined that the federal case law does not provide persuasive authority as to the meaning of "interstate driver," we instead rely on the Department's interpretation of its own regulation.

## C.     Deference to Agency's Interpretation

¶ 36     Here, the promulgating body — the Department — published an advisory bulletin to "discharg[e] its statutory duty of educating and assisting Colorado employees, employers and the general public on Colorado labor and employment laws and related workplace topics."  Colo. Div. of Labor, Advisory Bulletins and Resource Guide Foreword (Mar. 31, 2012), https://perma.cc/7PLA-ZTRD (hereinafter Advisory Bulletin).  As pertinent here, the Advisory Bulletin separately defines "interstate driver" and *intrastate* driver for purposes of determining coverage and exemptions under the Wage Order.  *Id.* § 22(I).

¶ 37     To be sure, we do not give the Advisory Bulletin the same deference that an agency's interpretation arrived at after notice-and-comment rulemaking would warrant under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).  Indeed, as the Advisory Bulletin itself states, it is not "an official record of action or law."  Advisory Bulletin Foreword.  Nonetheless, the interpretation in the Advisory Bulletin is "entitled to respect" to the extent it has the "power to persuade."

*Christensen*, 529 U.S. at 587 (citation omitted); *Preserve*, 129 P.3d at 1020.

¶ 38 An agency interpretation's persuasiveness is derived in part from the "thoroughness evident in its consideration" and from its reflection of a body of experience and informed judgment. *Skidmore v. Swift*, 323 U.S. 134, 140 (1944). The Advisory Bulletin meets these criteria. It is a 200-page document, comprehensively addressing wage law and related workplace topics, and, in it, the Department acknowledged the "extensive input and feedback [it had] received from Colorado employees, employers, attorneys, law firms, and organizations regarding the content of this publication." Advisory Bulletin Foreword.

¶ 39 Further, to be persuasive, an agency interpretation must be consistent and contemporaneous with other pronouncements of the agency, and must be reasonable, given the language and purpose of the statutes the regulation is designed to implement. *See Skidmore*, 323 U.S. at 140; *Cleary ex rel. Cleary v. Waldman*, 167 F.3d 801, 808 (3d Cir. 1999). Again, the Advisory Bulletin satisfies these criteria. Its provisions defining (and addressing the distinctions in coverage between) "interstate drivers" and *intrastate* drivers were

17

published contemporaneously with, and have not been revised since its March 2012 publication date. And these provisions do not conflict with — but rather fulfill the Department's statutory duty to explain — the Wage Order's exemption of "interstate drivers" from its coverage. *See* Advisory Bulletin Forward (noting that it is "not intended to expand, narrow, or contradict current law"). And, the Advisory Bulletin's provisions are reasonable given the General Assembly's objective of requiring Colorado employers to provide adequate wages for their workers. *See* § 8-6-101(1), C.R.S. 2017 (stating that inadequate wages exert a "pernicious effect" on the health and morals of workers); § 8-6-104, C.R.S. 2017 (prohibiting inadequate wages); *see also Montemayor v. Jacor Commc'ns. Inc.*, 64 P.3d 916, 923 (Colo. App. 2002) (providing that the Colorado Wage Claim Act is to be liberally construed to carry out its purpose to require Colorado employers to timely pay wages and to provide adequate judicial relief when wages are not paid).

¶ 40    Also, consistent with the Wage Order, the Department's Advisory Bulletin clarified that if Colorado gives greater protection to the worker than that provided in the FLSA, then Colorado's

definition controls.  In a section entitled "Federal Law vs. Colorado

Law," the Department explains that

> [e]mployers and employees in Colorado may be
> covered by either federal wage law, state wage
> law, both state and federal law, or neither,
> depending upon the particular circumstances.
> Whenever employers are subject to both
> federal and Colorado law, the law providing
> greater protection for the employee or setting
> the higher standard shall apply.

Advisory Bulletin § 29(I).

¶ 41     We therefore determine that the Advisory Bulletin is

persuasive and entitled to respect such that "courts and litigants

may properly resort [to it] for guidance."  *See Skidmore*, 323 U.S. at

140.  Thus, we will consider the Advisory Bulletin in attempting to

discern the Department's intent in promulgating the Wage Order's

exemption of "interstate drivers."  *See Christensen*, 529 U.S. at 587;

*see also Skidmore*, 323 U.S. at 140.

¶ 42     The Advisory Bulletin clarifies which drivers the Department

considers to be "interstate drivers" exempt from overtime pay.

Advisory Bulletin § 22(I).  It defines "interstate drivers" as "drivers

whose work takes them across state lines."  *Id.*  It states that these

drivers "are exempt from all of the provisions" of the Wage Order. *Id.*

¶ 43 And, in contrast, the Advisory Bulletin defines "intrastate drivers" as "[d]rivers whose work travel is entirely within the State of Colorado." *Id.* It states that *intrastate* drivers are "not specifically exempted from the provisions" of the Wage Order. *Id.* Rather, determinations of coverage and exemptions for these drivers are to be made on "a case-by-case basis in accordance with the provisions of the Wage Order." *Id.* The Advisory Bulletin states that "[f]or an intrastate driver to be covered by the Wage Order, the driver's work must be performed for an employer categorized in one [of] the four covered industries as specified by the Wage Order."[5] *Id.*

¶ 44 We therefore conclude that the Department's interpretation of its own regulation is entitled to respect, *see Christensen*, 529 U.S. at 588; *see also Auer v. Robbins*, 519 U.S. 452, 461-62 (1997); *Sierra Club*, 166 P.3d at 312, and we construe the term "interstate

---

[5] The Wage Order covers employers in the following four industries: "(A) Retail and Service," "(B) Commercial Support Service," "(C) Food and Beverage," and "(D) Health and Medical." Wage Order § 1.

20

drivers" to apply only to drivers whose work takes them across state lines.

## IV. Conclusion

¶ 45 The term "interstate drivers" in the Wage Order applies only to drivers whose work takes them across state lines. Because Shamrock did not "plainly and unmistakably" demonstrate that Brunson falls within the Wage Order's exemption, *see Chase*, 129 P.3d at 1014-15, we reverse the court's summary judgment and remand the case for further proceedings.

JUDGE TAUBMAN and JUDGE KAPELKE concur.