COLORADO COURT OF APPEALS      **2017COA14**

Court of Appeals No. 15CA1753
El Paso County District Court No. 13CV30988
Honorable Thomas K. Kane, Judge

Active Release Techniques, LLC, a Colorado limited liability company; ART Corporate Solutions, Inc., a Colorado corporation; and ART Business Solutions, LLC, a Colorado limited liability company,

Plaintiffs-Appellants,

v.

Xtomic, LLC, a Colorado limited liability company; Select Seminar Services, LLC, a Colorado limited liability company; and Jay Ferguson,

Defendants-Appellees.

---

JUDGMENT AND ORDER AFFIRMED IN PART, VACATED
IN PART, AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE ASHBY
Freyre and Davidson*, JJ., concur

Announced February 9, 2017

---

Shook, Hardy & Bacon, L.L.P., Richard G. Sander, Daniel E. Rohner, Denver, Colorado, for Plaintiffs-Appellants

Howard & Jensen LLC, Erin M. Jensen, Colorado Springs, Colorado, for Defendants-Appellees


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     Plaintiffs, Active Release Techniques, LLC; ART Corporate Solutions, Inc.; and ART Business Solutions, LLC (collectively, ART), appeal from the trial court's entry of judgment and an award of damages in favor of defendants, Xtomic, LLC; Select Seminar Services, LLC; and Jay Ferguson (collectively, Xtomic). We reverse in part and remand the case to the trial court to amend the damages award.

## I. Background

¶ 2     ART describes itself as a provider of "training, seminars and business support software for chiropractor and other health care professionals who specialize in soft tissue treatment techniques called Active Release Techniques." Tulio Pena was an employee of ART for several years and worked closely with ART's founder and owner, Dr. Michael Leahy. Mr. Pena introduced Jay Ferguson, a co-owner of Xtomic, to Dr. Leahy. Dr. Leahy hired Xtomic to manage ART's information technology (IT) services and provide IT support. Xtomic also developed software programs and wrote software code for ART.

¶ 3     Approximately ten years later, Mr. Ferguson, Mr. Pena, and others formed Select Seminar Services, LLC (S3). S3 was created to

1

market seminar training for a different soft tissue technique than that offered by ART, using software programs that Xtomic had developed, including a program that ART also used. When ART learned about S3, it petitioned the court for a temporary restraining order and a preliminary injunction. It also initiated the current litigation, asserting claims for, *inter alia*, misappropriation of trade secrets. Xtomic responded by asserting numerous counterclaims including, as relevant here, a claim for abuse of process. A jury ultimately decided all claims in Xtomic's favor and awarded $1,530,000 in damages. ART appeals.

## II. Directed Verdict

¶ 4    ART contends that the trial court erred by denying its motion for a directed verdict on Xtomic's counterclaim for abuse of process. We agree.

¶ 5    We review a trial court's decision on a motion for directed verdict de novo. *Top Rail Ranch Estates, LLC v. Walker*, 2014 COA 9, ¶ 17. A directed verdict should only be granted in the clearest of cases. *Huntoon v. TCI Cablevision of Colo., Inc.*, 969 P.2d 681, 686 (Colo. 1998). In deciding whether to grant the motion, the court should view the evidence and all reasonable inferences arising

2

therefrom in the light most favorable to the nonmoving party. *Huntoon*, 969 P.2d at 686; *Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.*, 186 P.3d 80, 82-83 (Colo. App. 2008). "If the evidence viewed in this light cannot support a verdict in favor of the nonmoving party, the court may grant a motion for directed verdict and the issue should not be submitted to the jury." *Bonidy*, 186 P.3d at 82 (quoting *Bryant v. Cmty. Choice Credit Union*, 160 P.3d 266, 271 (Colo. App. 2007)).

¶ 6     A valid abuse of process claim must allege

> (1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage.

*Mackall v. JPMorgan Chase Bank, N.A.*, 2014 COA 120, ¶ 39 (quoting *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App. 1998)). "The essential element of an abuse of process claim is the use of a legal proceeding in an improper manner; therefore, an improper use of the process must be established." *Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011). "[T]here is no liability for abuse of process if the defendant's

ulterior purpose was simply incidental to the proceeding's proper purpose." *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010), *as modified on denial of reh'g* (Feb. 24, 2011), *aff'd,* 2012 CO 50.

¶ 7 Here, ART moved for a directed verdict on Xtomic's abuse of process counterclaim at the close of the evidence as to the counterclaims. At trial, in support of its counterclaims, Xtomic argued that ART knew from the outset that it had no legitimate claims against Xtomic and the overly aggressive manner in which it pursued its claims against Xtomic was evidence of ART's ulterior motive to use the lawsuit as a means to harass Xtomic and run it out of business. In denying the directed verdict motion, the court relied primarily on the following: (1) ART's pre-trial settlement with Mr. Pena for $3000. Xtomic asserted that Mr. Pena was more culpable than Mr. Ferguson because Mr. Pena was an employee and close advisor to Dr. Leahy and had violated his fiduciary relationship to ART. The nominal settlement was therefore, according to Xtomic, proof of ART's improper motive in filing the suit and aggressively pursuing it against Xtomic; (2) ART's reputation for filing lawsuits to control the behavior of former

4

associates and business partners; and (3) the nature and number of preservation letters that ART sent to numerous individuals, including spouses of Xtomic's co-owners, clients, and others who were not directly involved in the litigation.[1]  In our view, none of these actions, alone or in combination, demonstrates an abuse of a legal proceeding or court process.

¶ 8    Various remedies were developed at common law to balance the right of access to the courts against the competing interest of being free from unwarranted legal actions.  The tort of abuse of process was developed to provide a remedy for the filing of what could be otherwise meritorious legal actions that are then manipulated to achieve an improper advantage unrelated to the substance of the actions filed.  *See* Timothy P. Getzoff, Comment, *Dazed and Confused in Colorado: The Relationship Among Malicious Prosecution, Abuse of Process, and the Noerr-Pennington Doctrine*, 67 U. Colo. L. Rev. 675 (1996).

¶ 9    An abuse of process claim does not require proof of malice.  *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007).  The tort is

---

[1] The letters were not admitted at trial but were described as letters sent by ART's attorney requiring the recipients to preserve various documents in their possession relating to ART, Xtomic, and S3.

specifically designed to address misuse of and access to courts, not malicious intent. *See Mintz*, 284 P.3d at 66; *see also Cornelison v. TIG Ins.*, 376 P.3d 1255, 1268 (Alaska 2016) ("The required motive in an abuse of process claim is to put pressure on the person who is wrongfully sued to perform or to refrain from performing an action unrelated to the process."). And the tort is not actionable unless an ulterior purpose is combined with an improper use of a legal proceeding or process that is unrelated to, or outside the scope of, the action filed. *Aztec Sound Corp. v. W. States Leasing Co.*, 32 Colo. App. 248, 252-53, 510 P.2d 897, 899-900 (1973).

¶ 10    What constitutes a "legal" or "judicial proceeding" for abuse of process purposes has not previously been articulated in Colorado case law. However other jurisdictions have stated, consistent with the purpose behind the remedy, that it must involve an actual court process, not just an action taken in connection with a lawsuit. *See, e.g., Weinstein v. Leonard*, 134 A.3d 547, 556 (Vt. 2015) (Abuse of process "requires proof of improper use of specific court processes, rather than a use of the legal system for improper purposes."). Abuse of process therefore focuses not on the alleged wrongdoer's motivations or intentions, but on whether or not he used the legal

6

system for its intended purpose. *See Colo. Cmty. Bank v. Hoffman,* 2013 COA 146, ¶ 37 ("If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." (quoting *Sterenbuch,* 266 P.3d at 439)); *Mintz,* 284 P.3d at 66; *see also Weinstein,* 134 A.3d at 555.

¶ 11    Here, first, ART's settlement with Mr. Pena is not evidence of abuse of process. A settlement is a process designed to allow parties to resolve their conflicts without going through a full trial. Whatever ART's motives in reaching the settlement with Mr. Pena may have been, the process itself was used as intended. *See Colo. Cmty. Bank,* ¶ 38 ("[A]lthough an ulterior motive may be inferred from the wrongful use of process, the wrongful use may not be inferred from the motive."); *Sterenbuch,* 266 P.3d at 439.

¶ 12    Second, ART's reputation for filing, or even its abuse of process in, other lawsuits should have no bearing on its alleged abuse of process here. We must look at the use of the process in this instance objectively. *See Moore v. W. Forge Corp.,* 192 P.3d 427, 438 (Colo. App. 2007) ("Although the litigant's motive may be

7

important in determining whether there was an ulterior purpose, the plaintiff must still establish that, viewed objectively, an improper use of judicial process occurred.").

¶ 13 And third, the letters ART sent out were not a legal proceeding or a court process. *See Weinstein*, 134 A.3d at 556. From the evidence in the record, it appears that ART sent letters to numerous individuals after becoming concerned that e-mails that may have had some bearing on ART's claims to the software were being destroyed. The letters were used to inform the recipients that ART was investigating potential litigation and there could be adverse consequences if relevant evidence was not preserved. The letters were not, however, issued in conjunction with or as the result of a hearing or pleading before the court. They were sent prior to any court filing and independent of any court action or involvement, and there was no evidence that the court was asked to play any role in their issuance or enforcement. Therefore, we cannot conclude that they were a legal proceeding as contemplated by the abuse of process tort. *See Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006). Even if we assume, without deciding, that their intended purpose was to harass, intimidate, or otherwise harm

Xtomic, because sending them was an action taken outside of the scope of any legal proceeding, the abuse of process tort is inapplicable. *See Sterenbuch*, 266 P.3d at 439.

¶ 14     Accordingly, we conclude that the trial court should have granted ART's motion for a directed verdict on the abuse of process counterclaim as a matter of law.

¶ 15     Based on our conclusion that the motion for directed verdict should have been granted, we vacate the abuse of process verdict in favor of Xtomic. We also vacate any damages awarded in connection with that verdict. Because the damages award included other claims, we remand the case to the trial court to modify the damages award accordingly. ART's remaining contentions on appeal relate to the damages award for the abuse of process verdict; thus, our resolution of this issue renders them moot, and we need not address them. *See People in Interest of Ofengand*, 183 P.3d 688, 691 (Colo. App. 2008); *Sopko v. Clear Channel Satellite Servs., Inc.*, 151 P.3d 663, 668 (Colo. App. 2006).

### III. Appellate Attorney Fees

¶ 16     Xtomic asserts it is entitled to appellate attorney fees. We disagree.

¶ 17 "When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal." *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006). Because we have decided the appeal in ART's favor, Xtomic is not entitled to its appellate fees, and we decline to award them.

## IV. Conclusion

¶ 18 We vacate the jury's verdict in favor of Xtomic on the abuse of process claim. Accordingly, we also vacate the damages award predicated on that verdict. And we remand the case to the trial court to amend the damages award accordingly.

JUDGE FREYRE and JUDGE DAVIDSON concur.