Filed 12/23/25



VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 25-CV-2920

| | |
|---|---|
| LIAM FITZGERALD,<br> Plaintiff<br><br> v.<br><br> DANIEL BRADY,<br> Defendant | DECISION ON MOTION |

## RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Liam FitzGerald brings this action against Defendant Daniel Brady, alleging that he stalked him over a 12-month period. FitzGerald claims that Brady violated a Relief from Abuse ("RFA") Order, engaged in civil stalking, committed intentional infliction of emotional distress, and invaded his privacy, and also seeks punitive damages. Pursuant to Rule 12(b)(6) of the Vermont Rules of Civil Procedure, Brady now moves to dismiss the Complaint. Brady is represented by Attorney Brooks McArthur, Esq. and FitzGerald is representing himself. For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

### Factual Background

For purposes of deciding the instant motion, the Court accepts the following facts alleged in Plaintiff's Complaint and the attached documents as true. The Court makes no finding as to their accuracy.[1]

Plaintiff Liam FitzGerald lives in Charleston, South Carolina and Defendant Daniel Brady lives in Essex Junction, Vermont. On December 28, 2023, the Vermont Superior Court issued a final RFA Order in Docket No. 23-FA-3419, prohibiting Brady from contacting or surveilling FitzGerald in any form, including via third parties. Since the issuance of that Order, Brady has repeatedly and deliberately violated it on at least 16 occasions. These violations include direct digital messages via "Grindr," use of burner numbers, contact with third parties, dissemination of private medical and transgender-related information, and the hiring of a private investigator to surveil FitzGerald online.

FitzGerald attached a 67-page document to his Complaint. That document contains what appear to be numerous phone screenshots of messages sent on dating or other messaging

---

[1] *See Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514 ("On a motion to dismiss, the court must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor.").

applications, as well as charts that purport to categorize and/or describe the contents of the screenshots. Some of the messages appear to be sexually explicit. FitzGerald also attached an Affidavit to his Complaint.

In October 2024, Brady filed a motion to dismiss or modify the RFA Order issued by the family court. In that motion, he asserted that he had never violated the order. The family court denied that motion.

In his Complaint, FitzGerald asserts claims for violations of the RFA Order, civil stalking, intentional infliction of emotional distress ("IIED"), and invasion of privacy (intrusion upon seclusion). He also seeks punitive damages.

Discussion

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309). The court must "assume as true the nonmoving party's factual allegations and accept all reasonable inferences that may be drawn from those facts." *Wool v. Off. of Prof'l Regulation*, 2020 VT 44, ¶ 8, 212 Vt. 305 (quotation omitted). The burden on plaintiffs under Vermont law is "exceedingly low" at the pleading stage. *Prive v. Vt. Asbestos Grp.*, 2010 VT 2, ¶ 14, 187 Vt. 280. Motions to dismiss for failure to state a claim are "disfavored and should be rarely granted." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. Complaints are intended to give enough notice to the defendant to allow a response, but need not lay out every detail of the facts supporting the claim. *See Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1 ("The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it."). The goal is to "strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped causes of action and discouraging baseless or legally insufficient ones." *Id*.

Courts are "particularly wary of dismissing novel claims because 'the legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." *Montague*, 2019 VT 16, ¶ 11 (quotation omitted). "Nonetheless, where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Id*.

I.      Claim for Violation of RFA Order.

In Count I, FitzGerald alleges that Brady knowingly and repeatedly violated a court-issued protective order, and that he has "suffered emotional distress, loss of safety, and fear for his well-being" as a result. Compl. ¶ 12-13. He cites 15 V.S.A. § 1108(d), which merely outlines the procedure for enforcing a foreign abuse prevention order in Vermont. This claim fails because there is no private right of action for violation of an RFA order. Section 1108 does not establish any such private cause of action; instead, it outlines the ways in which law enforcement officers can enforce such orders and provides that violations of such orders can be prosecuted as criminal contempt. Indeed, FitzGerald appears to concede as much. *See* Pl.'s

Opp'n at 3 (clarifying that he "is not seeking damages under § 1108," that "Count I is not pled as a standalone statutory damages claim," and that "he relies on the RFA as background and evidence of Defendant's ongoing course of conduct"). To the extent Count I purports to be an independent claim, it is dismissed under Rule 12(b)(6). To the extent FitzGerald wishes to enforce the existing RFA Order, he should contact the police. *See* 15 V.S.A. § 1108(a) ("Law enforcement officers are authorized to enforce orders issued under this chapter.").

II.    Claim for Civil Stalking.

Next, in asserting a claim for "civil stalking" under 12 V.S.A. §§ 5131-38, FitzGerald alleges that Brady "engaged in a course of conduct that would cause a reasonable person to fear for their safety or suffer substantial emotional distress," and that his "conduct meets the definition of stalking under Vermont law, including digital surveillance, impersonation, and pursuit." Compl. ¶ 15-16. FitzGerald claims that, as a result of Brady's conduct, he has "suffered ongoing emotional harm, anxiety, trauma, and social isolation." *Id*. ¶ 17.

The "civil stalking" claim fails because, as with violations of RFA orders, stalking is not a common law tort. Nor has FitzGerald identified any authority that recognizes a private right of action for damages for stalking in Vermont. *See Haupt v. Langlois*, 2024 VT 3, ¶ 20, 218 Vt. 605 ("the civil stalking statute has no common-law antecedent"); A. Shimizu, *Domestic Violence in the Digital Age: Towards the Creation of a Comprehensive Cyberstalking Statute*, 28 Berkeley J. Gender L. & Just. 116, 128 (2013) ("Stalking as a tort has been an exclusively statutory creation as courts have been reluctant to extend common law to create a separate civil action for stalking."), cited in *Haupt*, 2024 VT 3, ¶ 20. While there is a statutory procedure to obtain an order against stalking or sexual assault, *see* 12 V.S.A. § 5133, FitzGerald has not stated that he seeks such an order. The "civil stalking" claim is dismissed under Rule 12(b)(6).

III.    Claim for Intentional Infliction of Emotional Distress ("IIED").

In Count III, FitzGerald claims intentional infliction of emotional distress. A prima facie claim for IIED must demonstrate "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Davis*, 2014 VT 134, ¶ 19 (citing *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395). Plaintiffs alleging IIED "carry a heavy burden." *Id*. ¶ 20. A defendant's actions must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Id*. (citing *Cate v. City of Burlington*, 2013 VT 64, ¶ 28, 194 Vt. 265). Such outrageous conduct must cause the plaintiff to suffer "distress so severe that no reasonable person could be expected to endure it." *Id*. (citation omitted); *see also Restatement (Second) of Torts* § 46, cmt. d (1965).

FitzGerald claims that Brady's conduct was "extreme and outrageous," that Brady intended to cause him severe emotional distress or acted with reckless disregard, and that he has suffered "psychological damage requiring medical and therapeutic care." Compl. ¶ 18-20. More specifically, he points to his allegations that Brady repeatedly violated a court order by contacting him directly or through third parties, contacted him via burner phone numbers,

3

surveilled him online, and disseminated private transgender-related information. Pl.'s Opp'n at 5-6. FitzGerald further argues that, because he lives in the "Deep South," the disclosure of transgender status "exposes individuals to heightened risk of harassment, discrimination, and violence." *Id.* at 6. Brady argues in a conclusory manner that none of the alleged conduct is extreme or outrageous. Def.'s Mot. to Dismiss at 9.

The Court observes that several of the messages that FitzGerald alleges were sent by Brady were sexually explicit. "When sexual harassment does not involve a touching, it may take the form of demands for sexual favors, sexual exposure by the defendant, or the like." Dobbs' *Law of Torts* § 387 (2d ed.). "Sexual harassment may count as intentional infliction of emotional distress although it involves no touching that would qualify as a battery." *Id.* § 48. Indeed, "[a] number of courts have recognized that sexual harassment can establish extreme or outrageous behavior that warrants recovery for intentional infliction of emotional distress." *Id.* § 387. A defendant "who knows his attentions are unwelcome, but who telephones and calls on the plaintiff persistently for months to request sexual contact, is rightly held liable for infliction of emotional distress." *Id.*; *see also id.* § 387 nn.23-24 (collecting cases). While a "single proposal for sexual contact, unaccompanied by pressure or repetition, has been held insufficient," *see id.* § 387 n.24, FitzGerald here has pled a pattern of repeated harassment under the backdrop of a restraining order whereby Brady knew such contact was unwelcome. "Repeated harassment may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress." *Sindi v. El-Moslimany*, 896 F.3d 1, 21 (1st Cir. 2018) (quotation omitted). Accordingly, FitzGerald has sufficiently pled a claim for IIED, and the ultimate determination must be left for summary judgment or a jury trial after further factual development.

IV.     Claim for Invasion of Privacy.

Finally, in Count IV, FitzGerald claims invasion of privacy, through "intrusion upon seclusion." He alleges that Brady "intruded upon" his "private life via unauthorized surveillance, social media infiltration, and communication with third parties," and that these intrusions were "highly offensive and caused significant emotional distress." Compl. ¶ 21-22. "The right of privacy is the right to be left alone." *Pion v. Bean*, 2003 VT 79, ¶ 35, 176 Vt. 1 (quoting *Denton v. Chittenden Bank*, 163 Vt. 62, 68-69, 655 A.2d 703, 707 (1994)). To establish an invasion of privacy, FitzGerald must show that Brady "intentionally interfered with [his] interest in solitude or seclusion in a way that would be highly offensive to a reasonable person" and the intrusion must be "substantial." *Id.* (citing *Denton*, 163 Vt. at 69). Thus,

> there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

*Restatement (Second) of Torts* § 652B, cmt. d (1977).

4

Brady argues that FitzGerald has no reasonable expectation of privacy in the information allegedly shared with third parties. However, the crux of the claim is the repeated contacts and the nature of those contacts, and the *Restatement* makes clear that repeatedly contacting someone can amount to invasion of privacy. *See id.*, cmt. d & illustr. 5. Brady also contends that his alleged actions cannot amount to "hounding" as a matter of law. The Court is not persuaded. FitzGerald references 16 instances of intrusion over a 12-month period, including hiring a private investigator to research him, disseminating medical information about his transgender status to third parties, asking third parties for information about his whereabouts, and directly contacting him with sexually explicit messages. *See* Pl.'s Opp'n at 6-7; Ex. A to Compl.; Ex. A to FitzGerald Aff. (filed July 12, 2025). Obviously, a mere one or two instances of intrusion is not enough. *See Weinstein v. Leonard*, 2015 VT 136, ¶¶ 29-31, 200 Vt. 615. And, similarly, "a handful of minor offenses are insufficient to constitute a tortious intrusion upon seclusion." *Id*. ¶ 32. But there is no precise number of attempted contacts or similar incidents that is required to state a claim for invasion of privacy. "[T]he threshold of when the number of calls becomes so persistent and frequent as to constitute "hounding" is not clearly delineated." 1 Rights of Publicity and Privacy § 5:99 n.19 (2d ed) (quoting *Charvat v. NMP, LLC*, 656 F.3d 440, 454 (6th Cir. 2011)) (collecting cases).

Moreover, the exact number of alleged intrusions alone is not always dispositive. "Although persistent intrusions are illustrative of the cause of action in the Second Restatement, it is clear that the important point is not that the intrusions be persistent but that the intrusions should by one means or another rise to the level of what a reasonable person would find highly offensive." *Bohnenkamp v. Whisterbarth*, No. 1:19-CV-00115-RAL, 2021 WL 1947248, at *6 (W.D. Pa. May 14, 2021) (quotation omitted); *see also* 1 Rights of Publicity and Privacy § 5:99 n.4 (discussing a hybrid test established by Maryland courts whereby "a plaintiff can make out an intrusion claim by either showing that the frequency of the communications indicates a pattern of harassment or, alternatively, by showing that the communications were of a 'vicious quality'" (citing *Household Fin. Corp. v. Bridge*, 252 Md. 531, 541, 250 A.2d 878, 884 (1969))). Here, the alleged 16 instances of intrusion over a year include sexually explicit messages where FitzGerald already had a restraining order against Brady. These actions, if proven, could constitute persistent conduct that would be highly offensive to a reasonable person. *See* Dobbs' *Law of Torts* § 580 (noting that "harassment – repeated and unwanted attentions – may be characterized as an intrusive invasion of privacy"); *see, e.g.*, *Kramer v. Downey*, 680 S.W.2d 524, 525 (Tex. App. 1984) (holding that plaintiff was properly awarded damages for invasion of privacy against woman who persisted for years in following him, waiting outside his residence attired in unusual fashion and occasionally making sexual remarks to him, and delivering to plaintiff numerous unwanted letters, cards and gifts). Without further factual development, the Court cannot conclude at this early stage of the proceedings that 16 alleged instances of intrusion over a one-year period is insufficient as a matter of law.[2]

---

[2] Defendant does not directly address Plaintiff's punitive damages claim (Count V) in his motion to dismiss. Thus, the Court leaves that claim for another day.

## V.     Plaintiff's Erroneous Citations of the Law.

Lastly, the Court observes that FitzGerald's Opposition appears to contain citations of non-existent cases and fake quotations, possibly generated by artificial intelligence. For example, FitzGerald cites to "*Russin v. Shepard*, 2014 VT 22, 12," Pl.'s Opp'n at 4, a case that does not exist. He misquotes *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1. *See* Pl.'s Opp'n at 3. The quote he attributes to *Colby* actually appears in *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. FitzGerald also misquotes *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 162, 624 A.2d 1122, 1129 (1992). The quote he attributes to *Hodgdon* does not appear in that case. *See* Pl.'s Opp'n at 6.

The Court reminds FitzGerald that, by presenting a document to the Court, he is certifying that:

> to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

V.R.C.P. 11(b)(2). "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023). Moreover, "[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Id*. A "citation to fake, AI-generated sources . . . shatters [] credibility with [the] Court" and "imposes many harms, including wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)." *Kohls v. Ellison*, No. 24-CV-3754 (LMP/DLM), 2025 WL 66514, at *4-5 (D. Minn. Jan. 10, 2025) (quotation omitted). As such, courts "do not, and should not, make allowances for a party who cites to fake, nonexistent, misleading authorities," and the consequences for doing so may be "steep." *Id*. at *5 (quotation omitted).

"Self-represented litigants 'receive some leeway from the courts' but are nonetheless bound by the ordinary rules of procedure, 'includ[ing] the obligations of Rule 11 and sanctions for noncompliance.'" *Rivard v. Windham State Att'y*, Case No. 25-AP-305, 2025 WL 3498177, at *2 (Vt. Dec. 2025) (unpub. mem.) (quoting *Zorn v. Smith*, 2011 VT 10, ¶ 22, 189 Vt. 219).[3] **Accordingly, FitzGerald "is warned that future conduct of this nature may result in sanctions."** *Id*.; *see also* V.R.C.P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may . . . impose an

---

[3] Trial courts are free to "consider three-justice decisions from [the Vermont Supreme] Court for their persuasive value, even though such decisions are not controlling precedent." *Washburn v. Fowlkes*, Case No. 2015-089, 2015 WL 4771613, at *3 (Vt. Aug. 2015) (unpub. mem.) (citing V.R.A.P. 33.1(d), providing that an "unpublished decision by a three-justice panel may be cited as persuasive authority but is not controlling precedent," except under limited circumstances).

appropriate sanction upon the . . . parties that have violated subdivision (b) or are responsible for the violation.").

<u>Order</u>

For the foregoing reasons, Defendant's Motion to Dismiss (Mot. # 3) is GRANTED as to Counts I and II and DENIED as to Counts III, IV, and V.

Additionally, <u>the Court warns Plaintiff that any future citation of nonexistent legal authorities or fake quotations, whether generated by artificial intelligence or otherwise, is a violation of Rule 11 of the Vermont Rules of Civil Procedure and may result in sanctions</u>.

Defendant shall file an Answer within 14 days and the parties shall filed a proposed discovery schedule within 14 days thereafter.

Electronically signed on December 22, 2025 at 3:23 PM pursuant to V.R.E.F. 9(d).

Megan J. Shafritz
Superior Court Judge

7