# STATE OF VERMONT

SUPERIOR COURT
Washington Unit

CIVIL DIVISION
Docket No. 314-9-20 Wncv

Vermont Mutual Insurance,
    Plaintiff

v.

John Bradley,
Marina Gold,
Tom Bradley,
    Defendants

FILED

2021 JAN 11 A 7:45

**DECISION ON MOTION**

### Decision on Vermont Mutual's Motion to Dismiss Counterclaim

Plaintiff Vermont Mutual Insurance Company initiated this case seeking a determination as to whether it has any duty of defense or indemnity regarding a tort claim asserted by Defendant Marina Gold against its homeowner's policyholders, Defendants John Bradley and Tom Bradley, due to some sort of alleged post-loss fraud by John. In response, John filed a counterclaim against Vermont Mutual asserting: (1) breach of fiduciary duty; (2) bad faith; (3) breach of the duty of good faith and fair dealing; (4) violation of the Vermont Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2481x; and (5) abuse of process. The thrust of John's claims is that Vermont Mutual knows that this action by it lacks any good faith basis and nevertheless filed it to punish its own insureds and to improperly manipulate settlement negotiations in the underlying tort suit.

Vermont Mutual seeks Rule 12(b)(6) dismissal of all 5 counts of the counterclaim. It argues that the separately pleaded breach of fiduciary duty, bad faith, and good faith and fair dealing claims are really just different labels for one insurer bad faith claim. It argues that there can be no bad faith claim in this case because it is providing a defense in the tort suit and is doing exactly what it is supposed to do—pursuing a separate declaratory judgment action—to have its obligations under the policy determined. For much the same reason, it argues that there can be no viable abuse of process claim in these circumstances. Finally, it argues that the CPA does not apply to insurance contracts as a matter of law.

The court notes at the outset that the allegations in both the complaint and the counterclaim are exceptionally vague, and both parties littered their dismissal briefing with factual representations not appearing in the pleadings at all. As the court does not consider extra-pleading material under Rule 12(b)(6), all such allegations are disregarded for purposes of this decision.

Vermont Mutual alleges in the complaint that John reported Ms. Gold's injury, a twisted ankle, to it sometime after it occurred. He explained at one time that it occurred in a certain place in the yard of the insured premises. He later reported that it occurred in a different part of the yard. Ms. Gold's report of the location of the injury apparently was consistent with one

of the locations reported by John. Vermont Mutual claims that the inconsistencies in John's accounts of the location of the injury were intentional and, without elaboration, designed to maximize the indemnity benefits to which Ms. Gold may be entitled. At the time of the injury, Ms. Gold was John's romantic and business partner. The assertion of fraud in the complaint is entirely conclusory, and there is no explanation of how anything John may have done could have affected Vermont Mutual's indemnity obligation under the policy.

John denies any intentional misrepresentation and alleges—vaguely—that this declaratory judgment action is being used by Vermont Mutual unfairly in the tort suit itself and otherwise is baseless. Although John does not specify how Vermont Mutual may be using this litigation in the tort suit, one imagines an offer to withdraw a frivolous and oppressive declaratory action in exchange for a lowball settlement otherwise unwarranted in the tort suit.

*Bad faith*

John's breach of fiduciary duty and good faith and fair dealing claims appear to be nothing more than alternative labels for his one insurer bad faith claim. However, insofar as they are mere labels, recognizing them as such, as Vermont Mutual urges, gives the court nothing to dismiss. There is no point to dismissing a label.

Otherwise, the court rejects Vermont Mutual's argument that it is somehow inoculated from any bad faith claim as a matter of law because it enjoys a limitless right to file declaratory judgment actions to determine policy obligations. John's argument is not that just *any* declaratory judgment action by an insurer would be an act of bad faith. It is that this one is because Vermont Mutual knows that it is baseless and is pursuing it anyway to impose unjust expense and distress on its own insureds and to unfairly manipulate settlement negotiations in the separate tort suit in derogation of its obligations and its insureds' rights. If John can prove up this claim, he may well establish Vermont Mutual's bad faith. The mere circumstance of Vermont Mutual having filed a declaratory judgment action does not somehow insulate it from such a claim.

*Abuse of process*

Vermont Mutual argues that no claim has been stated for abuse of process because, even if it were true that Vermont Mutual instituted this litigation with malicious intent, it cannot be said to have used any process in an "improper" manner because it has simply filed a declaratory judgment action to have its rights determined.

As the Vermont Supreme Court has described, "A party alleging abuse of process must demonstrate '1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff.' Even if used to satisfy malicious intentions, 'the proper use of . . . legal process . . . is not actionable.'" *Weinstein v. Leonard*, 2015 VT 136, ¶ 22, 200 Vt. 615 (citations omitted). Thus, mere frivolous or vexatious litigation is not an abuse of process. *Id.* However, use of legal process "to gain an advantage to

2

which [the proponent] is not entitled" is improper. Dobbs' Law of Torts § 594 (2d ed.). For example, embroiling someone in frivolous lawsuit A to force an unwarranted favorable settlement in lawsuit B very well may amount to an abuse of process. This is what the court understands John to be claiming in this case. He has not failed to state a claim.

*The CPA claim*

John also alleges that he took out the policy with Vermont Mutual in reliance on misleading advertising statements such as that Vermont Mutual is "an insurance company that exists for the protection of its policyholders," and that such deceptions violate the CPA. That and the other statements cited by John would appear on the surface to be nonactionable puffery at worst. However, Vermont Mutual does not seek dismissal on that basis.[1] Rather, it argues that insurance is neither a good nor a service subject to the CPA at all, relying on *Wilder v. Aetna Life & Cas. Ins. Co.*, 140 Vt. 16 (1981).

When the CPA was originally enacted in 1967, it defined goods and services (which in part define the transactions subject to the CPA) by reference to statutory definitions of those terms in Vermont's pre-existing Retail Installment Sales Act. 1967, No. 132, § 1 (9 V.S.A. § 2454(c) (1967)). In 1969, the text of those definitions was incorporated directly into the CPA. 1969, No. 45, § 1 (9 V.S.A. § 2454(c)(2), (3)). In 1974, the CPA's separate definitional section, 9 V.S.A. § 2451a, was first adopted. 1973, No. 221 (Adj. Sess.), § 3. Goods and services then were defined as follows:

> (b) "Goods" means all tangible personal chattel including motor vehicles and mobile homes when purchased primarily for personal, family or household use and not for commercial, industrial or agricultural use, and courses of instruction or training regardless of the purpose for which they are taken. The term includes chattels which are furnished or use, at the time of sale or subsequently, in the modernization, rehabilitation, repair, alteration, improvement or construction of real property as to become a part thereof whether or not severable therefrom. The term also includes merchandise certificates or coupons, issued by a seller, not redeemable in cash and to be used in their face amount in lieu of cash.

> (c) "Services" means work, labor and services furnished for personal, family or household use (and not for commercial, industrial or agricultural use) in connection with the delivery, installation, servicing, repair or improvement of goods sold under contract work, labor and service of any kind rented or

---

[1] Vermont Mutual does argue in the alternative that the statements are nonactionable puffery in its reply brief, but it had not previously raised the matter. Ordinarily, the court will not address issues first raised in a reply brief because the opposing party was deprived of a fair opportunity to respond. See *Bigelow v. Dep't of Taxes*, 163 Vt. 33, 37–38 (1994). That is the case here. The court therefore declines to address the puffery argument at this time.

3

furnished by a person engaged in the business of seller which are for personal, family or household use and not for commercial, industrial or agricultural use.

9 V.S.A. § 2451a (1974). So the definitions remained when the dispute underlying *Wilder* arose.

In *Wilder*, tort claimants settled a tort suit with the tortfeasor's insurer, which then asserted a setoff that was in dispute and evidently refused to pay some or all of the settlement. The tort claimants then sued the insurer claiming, among other things, a violation of the CPA (then known as the Consumer Fraud Act). The trial court dismissed the CPA claim, which then was considered by the Supreme Court on interlocutory review. The Court rejected the applicability of the CPA in a single paragraph:

> To fall within the scope of the Act, the "unfair methods of competition" or "unfair or deceptive acts or practices" must occur "in commerce." The business of insurance is clearly within commerce. However, the selling of an insurance policy is not a contract for "goods or services" within the meaning of 9 V.S.A. § 2461 allowing for civil penalties. Insurance cannot legitimately be labelled either goods or services *as the Legislature has defined those terms. . . .* While the Act must be construed liberally in order to serve its remedial purpose, we cannot so freely stretch its meaning as to evade the Legislature's intent.

*Wilder*, 140 Vt. at 18–19 (citations omitted, emphasis added). The terseness of the Court's analysis was eminently justified considering the definitions of goods and services existing at that time (1981).

However, in 1985, in two separate amendments, the legislature consolidated the definitions of goods and services into one joint definition at 9 V.S.A. § 2451a(b) and sweepingly expanded its scope. See 1985, No. 34, § 1; 1985, No. 61, § 1. By the end of 1985, the definition of "goods and services" read in relevant part:

> "Goods" or "services" shall include any objects, wares, goods, commodities, work, labor, intangibles, courses of instruction or training, securities, bonds, debentures, stocks, real estate, or other property or services of any kind.

9 V.S.A. § 2451a(b) (1985). This language is the same in the current statute.

The 1985 legislation raised the issue of whether the relevant holding of *Wilder* remains good law considering the new definition. A few trial court decisions represent the view that *Wilder* remains in force, essentially because neither 1985 Act expressly says that it was intended, at least in part, to overturn the earlier *Wilder* holding, and neither expressly uses the word *insurance* either way in the definition of goods or services. See, e.g., *Nautilus Ins. Co. v. Loomis*, No. 194-9-10 Oecv, 2012 WL 1144698 (Vt. Super. Ct. Feb. 29, 2012). The *Nautilus* court also expressed the view that it would be inappropriate for a trial court to first recognize that

4

the 1985 amendments abrogated *Wilder*. Rather, it suggested, the Supreme Court should do so or the legislature should make its intentions more express.

Other trial courts have been willing to simply analyze the broad language of the amended definition, conclude that it encompasses insurance, and recognize that the 1985 amendments abrogate *Wilder*, which is no longer good law on this issue. See, e.g., *Johnson v. Smith Bros. Ins., LLC*, No. 1062-12-18 Cncv, 2020 WL 5875652 (Vt. Super. Ct. Feb. 18, 2020) (Toor, J.); *Blake v. Progressive Northern Ins.*, No. 164-9-15 Oecv, 2016 WL 1167746 (Vt. Super. Ct. Feb. 4, 2016) (Tomasi, J.). The court finds Judge Toor's and Judge Tomasi's analyses in *Johnson* and *Blake*, respectively, compelling and adopts them for purposes of this case.

The short of it is that the *Wilder* holding was expressly based on the limited scope of the definitions of goods and services that prevailed prior to 1985. In 1985, the legislature clearly dispensed with the previous, cramped definitions in favor of a consolidated, extremely broad definition including both "intangibles"—without qualification—and "property or services of any kind." Insurance has no evident special status in the law or the CPA that would exempt it from the breadth of such expressions. Moreover, specialized provisions of the CPA applicable to home solicitation sales are predicated on the general definition of goods or services and yet expressly exempt home solicitations involving "the sale of insurance." 9 V.S.A. § 2451a(d)(5). There would be no apparent need for such an exemption in the case of the CPA's home solicitation sales provisions if insurance were not already within the meaning of goods or services.

This is not a case where the Supreme Court interpreted a statute, and the legislature then amended the statute but did so without altering the statutory language that gave rise to the Court's interpretation. Here, the 1985 amendments to the definitions of goods or services fully undermined the relevant holding of *Wilder*, which is no longer good law on that point.

The CPA applies to consumer purchases of insurance.

Order

For the foregoing reasons, Vermont Mutual's motion to dismiss is denied.

Robert R. Bent,
Judge

5